# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

VALASSIS COMMUNICATIONS, INC.,

    Plaintiff,

v.

NEWS AMERICA INCORPORATED, a/k/a NEWS
AMERICA MARKETING GROUP, NEWS AMERICA
MARKETING FSI, INC. a/k/a NEWS AMERICA
MARKETING FSI, LLC and NEWS AMERICA
MARKETING IN-STORE SERVICES, INC.
a/k/a NEWS AMERICA MARKETING
IN-STORE SERVICES, LLC,

    Defendants.

Case No. 2:06-cv-10240

Hon. Arthur J. Tarnow

---

## DEFENDANTS' ADDITIONAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I.  **INTRODUCTION**

Defendants file this additional brief in Support of their Motion for Summary Judgment to highlight a series of admissions by Plaintiff Valassis' experts at the state court trial between the parties. While the state court action involved different legal issues from this case, Valassis' experts submitted the same expert reports, and offered largely the same opinions, in both cases. Their concessions in the state court trial are fatal to Valassis' ability to meet the more demanding requirements of the federal antitrust laws.

In the state court trial, Valassis' experts:

- Admitted that News America's allegedly anticompetitive conduct was both extremely limited and had no effect on Valassis' wins and losses in the marketplace.

- Claimed that Valassis is in danger of being pushed out of the market by News America, but had no idea whether its current (allegedly weak) market position is due in any way to News America.

- Did not link any of their claimed damages to the alleged anticompetitive effects – even though the antitrust laws require that damages arise from anticompetitive effects.

Given this testimony, Valassis cannot possibly prove harm to overall competition or that News America's conduct creates the risk of a monopoly. Valassis' claims cannot possibly be sustained.

II.  **RELEVANT TESTIMONY**

Dr. Mackie-Mason testified in the state court trial on, among other things, the probability that Valassis would be forced to exit the market by News America's conduct and what he found to be below cost pricing by News America. Valassis has relied on Dr. Mackie-Mason's opinions on these precise issues in its summary judgment briefs. *See* Valassis' Brief in Opposition to Defendants' Motion for Summary Judgment [193] ("Valassis' Opposition Brief") at 5, 6, 10, 11, 19, 21; Valassis' Reply Brief in Support of Motion for Partial Summary Judgment [208] at 3, 11.

1

At the trial, Dr. Mackie-Mason made major concessions on both these issues. First, he admitted that the alleged below cost pricing represented only a small fraction of the alleged relevant market. It was thus largely irrelevant to competition in that market.[1] He testified that he examined 250 offers by News America, and was only able to find that 15 of them were allegedly below cost. 6/25/09 Trial Tr. (Exhibit 1 hereto) at 224-225.[2] Dr. Mackie-Mason also admitted that the 15 alleged below cost offers were the "only activity that I think satisfies that [sic] the antitrust standard for economic forcing . . ." *Id.* at 178. Moreover, he found more cases of *above* cost than below cost pricing. *Id.* at 219-220.[3]

Additionally, a newly produced analysis by Dr. Mackie-Mason showed that the alleged below cost offers *had essentially no impact on News America or Valassis*. His data shows that if the offers were "below cost, News won 76% of the time . . ." *Id.* at 221. And if the offers were "above cost, News won 75% of the time . . ." As Dr. Mackie-Mason admitted, this shows that "News succeeded at almost the identical percentage of times when it was pricing above cost under [Mackie-Mason's] measure, as compared to when it was pricing below cost and what [he] call[s] predatory . . ." *Id.* at 222.

---

[1] Of course, News America has argued in the prior summary judgment briefs that Dr. Mackie-Mason's methods are invalid as a matter of law. *See* Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment [199] at 1-2, 7-8; Defendants' Reply Brief in Support of Motion for Summary Judgment [208] at 9; and Defendants' Supplemental Brief in Support of Motion for Summary Judgment [242] at 7. The issues addressed in this brief show that, even assuming the validity of Dr. Mackie-Mason's contentions, his admissions at trial prove that Valassis cannot satisfy the elements of its claims.

[2] Of the 250 offers, Dr. Mackie-Mason was able to reach a conclusion as to 41. *Id.* at 219-220. He found 26 of those 41 offers above cost and was unable to reach a conclusion as to the other offers. *Id.* at 224.

[3] News America's inclusion of discounts and quoting of "net effective rates" in its offers to CPGs was subsumed in Dr. Mackie-Mason's analysis of below cost offers. *Id.* at 109-111.

Dr. Mackie-Mason also admitted that his prediction that News America's conduct would force Valassis from the market in the *future* was made without any basis in the *past* or *present*. *Id.* at 172-173. Thus, it was utterly speculative. In fact, Dr. Mackie-Mason admitted that he had no idea whether Valassis itself, not News America, was responsible for its allegedly precarious position:

> Q. So if Valassis got to where it is today, because of a series of its own blunders, if I were to assert that, you have no basis to agree or disagree with that?
>
> A. That's correct, I have not studied that question.

*Id.* at 172-173.

In fact, while Dr. Mackie-Mason's theory depends upon the claim that Valassis' market share and/or price will fall in the future, he didn't "study the causes of Valassis' prices falling," and his alleged "below cost offers cannot explain the major market share drop" that occurred before "market shares have been stable." *Id.* at 206-207. His 15 offers could not explain the market share shift, since all but one occurred years later. *Id.* at 197-198.

Dr. Bamberger's opinions were completely vacuous on the critical antitrust question of the relationship between damages and anticompetitive effects. Dr. Bamberger attempted in the state court case (like this case) to measure damages by the same "before and after" model that compared Valassis' market share and prices before and after the alleged effect of News America's allegedly changed conduct in 2002. 6/11/09 Trial Tr. (Exhibit 2 hereto) at 17-19; Expert Report (Federal) of Gustavo Bamberger (Exhibit 3 hereto) at ¶10. But he admitted at trial that his analysis did not in any way focus on the specific conduct that is alleged to be anticompetitive:

> There was conduct before [by News America] and there was conduct after. Exactly how it changed I haven't attempted to

3

>     distinguish exactly how it changed. All I notice is the world
>     changed and that's what I am estimating.

6/11/09 Trial Tr. at 102-103. In fact, he agreed that his damages "do not depend in any way on the specific nature of what News America's acts may or may not have been." *Id. See also id.* at 148.

Dr. Bamberger also admitted that his damages calculation does not distinguish between the effects of below cost and above cost bundling. *Id.* at 105-106. Nor was his damages estimate tied in any way to particular customers who could have been subject to below cost bundling. Instead, he was "measuring [only] the aggregate effect of News' conduct." *Id.* at 100.

## III. VALASSIS' ATTEMPTED MONOPOLIZATION CLAIM SHOULD BE DISMISSED

### A. Predatory Pricing In This Case Must Be Below Cost

While Valassis depends on Dr. Mackie-Mason to prove below cost pricing and the "dangerous probability" of monopoly, his testimony establishes the critical flaws in these claims. Valassis has argued that it can prevail without proving that prices are below cost. Valassis' Opposition Brief at 15-19. Both Dr. Mackie-Mason's testimony at the state court trial and recent case law confirm that that argument is erroneous.

Dr. Mackie-Mason explained the critical difference between below cost and above cost bundled pricing; Valassis can profitably compete for above cost bundles. He agreed that if "the only thing that News is doing is offering above cost bundles, properly measured, then I believe an equally efficient competitor could compete profitably . . ." 6/25/09 Trial Tr. at 170. Indeed, Dr. Mackie-Mason previously conceded in his deposition that he has not found any conduct that was "economically anticompetitive" *except* for the alleged below cost bundles. Mackie-Mason Dep. (Exhibit 4 hereto) at 149-150.

4

This conclusion is also supported by the Ninth Circuit's recent decision in *John Doe 1, et al. v. Abbott Laboratories*, 571 F.3d 930 (9th Cir. 2009), which interprets the Supreme Court's decision in *Pacific Bell Telephone Co. v. linkLine Communications, Inc.*, 129 S.Ct. 1109 (2009). The Ninth Circuit in *John Doe 1* concluded what News America has previously argued (and Valassis denied); that the analysis of the Supreme Court in *linkLine* regarding the need for below cost pricing in a two product pricing scheme fully applies to bundled pricing.

The claim in *John Doe 1* related to the sale of Norvir, a "booster" drug, with the sale of Kaletra, a "boosted" protease inhibitor that also includes the ingredients in Norvir. Plaintiffs' allegation was that defendant Abbott charged too high a price for the standalone booster, while charging too low a price for the "boosted" product (effectively a "bundle" of the booster and the un-boosted inhibitor). The Ninth Circuit agreed with defendants that "the outcome here follows from *linkLine* . . ." Since plaintiffs "allege no refusal to deal at the booster level, and no below cost pricing at the boosted level", under *linkLine*, the claim could not stand.

The same conclusion applies here. Valassis alleges that News America charges prices that are too low for bundles of in-store and FSI products, while charging "penalty pricing", i.e. prices that are too high, for the in-store products if purchased alone. *See* Valassis' First Amended Complaint dated October 16, 2006 [36] at ¶¶ 40-42. As the Supreme Court made clear in *linkLine*, such a "price squeeze", is simply not unlawful in the absence of below cost pricing.[4]

### B. The Alleged Anticompetitive Conduct Could Not Be Sufficient For Attempted Monopolization

---

[4] It is hard to imagine any other conclusion, given the Supreme Court's consistent emphasis on the requirement that prices not be deemed unlawful unless they are below cost, whether in the context of a single sale price, *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993)a purchase price, *Weyerhauser v. Ross-Simmons Hardwood Lumber Co., Inc.*, 549 U.S. 312 (2007), or pricing for multiple products, as in *linkLine*.

5

Once *linkLine* and the other relevant case law is properly applied, it is clear that Dr. Mackie-Mason's admissions doom Valassis' attempted monopolization claim in two ways. Valassis claims that Dr. Mackie-Mason's analysis "confirms multiple instances of predatory, below-cost pricing by NAM." Valassis' Opposition Brief at 19. But Dr. Mackie-Mason's admissions establish that there were far too few below cost offers alleged here to establish a viable claim. The Sixth Circuit has established that below cost pricing cannot support an antitrust claim unless it applies to the average price for *all* sales of the product in the relevant market, not merely 15 offers.

The Sixth Circuit first enunciated this principle in *Directory Sales Management Corp. v. Ohio Bell Telephone Co.*, 833 F.2d 606, 614 (6th Cir. 1987), where the Court concluded that "to demonstrate predatory pricing [the plaintiff] would have to show that the defendants' *overall charges* for advertising space in their yellow pages are priced below cost." (Emphasis added.) The Court cited *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48 (2nd Cir. 1979), where, according to the Sixth Circuit, plaintiff's claim failed because it could not show that alleged predatory pricing "would produce even a short-term loss for the [promoting newspaper's] operations *taken as a whole*." 833 F.2d at 614 (emphasis in original). The Sixth Circuit went on to say that "[s]imilarly, in the case before this Court, the relevant area of inquiry should be [the defendant's] operations taken as a whole." *Id.*

In *Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917, 946 (6th Cir. 2004), the Sixth Circuit reaffirmed this ruling, while clarifying that it applied only to the products or services within the relevant market. ("We adopt the principle of *Brooke Group* that where reasonable economic proof justifies a relevant market, the appropriate measure of costs for predatory pricing claim is for the particular good or service in that market . . .").

6

Dr. Mackie-Mason's analysis is completely inconsistent with this standard.  15 out of 250 offers below cost cannot indicate that News America's prices, "taken as a whole", were below cost.  833 F.2d at 614.  Valassis' evidence cannot meet the Sixth Circuit standard.

### C.   Valassis Cannot Prove A Dangerous Probability Of Success

Dr. Mackie-Mason's admissions also destroy Valassis' "dangerous probability" claim.  In its Opposition Brief, Valassis relied primarily on Dr. Mackie Mason for the proposition that "unless NAM is forced to cease its anticompetitive behaviors, it will likely succeed in forcing Valassis to abandon the FSI market."  Valassis' Opposition Brief at 11, citing Mackie Mason Decl. [194] at ¶ 7(d).

However, Dr. Mackie-Mason's trial testimony further confirms that his opinion is absolutely baseless.  He makes this prediction about the *future*, without any study of the *past*.  Moreover, his own evidence (the 75% versus 76% won-loss rates and his admission that his alleged below cost offers do not explain the market share shift) establishes that Valassis was not affected by any allegedly anticompetitive conduct.  If News America's allegedly anticompetitive conduct has not affected Valassis' share up until now, how can he possibly predict that the same conduct will be fatal to Valassis in the future?  Coupled with Valassis' currently stable market shares, and the very limited nature of the alleged below cost pricing, there is no foundation for the assertion that anticompetitive conduct by News America will result in a monopoly.

Under the circumstances, Judge Steeh's conclusion in a similar case that Dr. Mackie-Mason was "speculating," *Compuware Corp. v. IBM*, 366 F. Supp. 2d 475 (E.D. Mich. 2005), is more than amply justified here.  Use of a crystal ball cannot meet the standards of reliability necessary to avoid summary judgment.  *See e.g. Brooke Group, supra* at 243 ("when an expert opinion is not supported by sufficient facts to validate it in the eyes of the law . . . it cannot support a jury's verdict.").  There is no reliable basis for the claim.

7

### IV. VALASSIS' TYING CLAIM MUST FAIL

The state court testimony establishes a number of other critical flaws in Valassis' claims. For example, Valassis' tying claim depends on the need to prove that customers were "forced" to purchase the bundles from News America. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12-13, 25 (1984). While Dr. Mackie-Mason claimed that his alleged below cost offers are (the only) examples of customer forcing, his own analysis of the "won-loss" rate from below cost versus above cost offers makes clear that no forcing occurred. As discussed above, he found virtually identical rates of success by News America for those offers that were below cost as for those that were above cost. This is completely inconsistent with any claim that News America's customers were forced to buy the bundle when News America made a below cost offer. They acted equally independently in both cases.

### V. VALASSIS CANNOT PROVE ANTITRUST INJURY

Perhaps the most important element of any antitrust claim is antitrust injury, the requirement that injury flow from the anticompetitive effects of the challenged conduct:

> Under Sixth Circuit case law, "it is not enough for the plaintiff to claim economic injury: 'Plaintiffs must prove antitrust injury which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.'" . . . Such a heightened standard is required because the relevant antirust laws "were enacted for 'the protection of competition not competitors.'" . . .
>
> By emphasizing the importance of establishing "antitrust injury," courts ensure "that antitrust litigants use the laws to prevent anticompetitive action and make[] certain that they will not be able to recover under the antitrust laws when the action challenged would tend to promote competition in the economic sense." . . . Otherwise, "routine disputes between business competitors would be elevated to the status of an antitrust action, thereby trivializing the Act because of its too ready availability."

8

*Indeck Energy Services v. Consumers Energy Co.*, 250 F.3d 972, 976 (6th Cir. 2000) (citations omitted). Ironically, Valassis' state court testimony establishes that this critical requirement (which helps distinguish federal antitrust claims from state law disputes) is not met here.

The experts' testimony is inconsistent with the antitrust injury requirement. Dr. Mackie-Mason effectively admitted that his alleged anticompetitive offers had no impact, since purchasers picked Valassis with the same frequency whether they received alleged below cost or above cost offers. *See* discussion *supra* at 2.

Conversely, Dr. Bamberger's analysis of damages and impact had no relationship to the alleged anticompetitive effects. While Dr. Mackie-Mason focused on 15 "economically anticompetitive" offers, *supra* at 4, Dr. Bamberger looked only at News America's conduct in the *aggregate*. This utterly fails to meet the antitrust injury requirement. Where the damages expert's analysis does not match the conclusion of the expert on anticompetitive effects, then antitrust injury (damages *arising from* anticompetitive effects) simply cannot be isolated. In particular, if the anticompetitive conduct here is below cost pricing, and Dr. Bamberger's model does not distinguish between above cost and below cost bundles, *see* discussion *supra* at 4, then his entire analysis has missed the mark. Damages that "do not depend in any way on . . . the specific nature of News America's acts," *supra* at 4, cannot be tied to anticompetitive acts.

Dr. Bamberger's model by its nature could not possibly "fit" both the conduct found anticompetitive in this case and the conduct found unlawful in the state trial. Here, Dr. Mackie-Mason has found forcing, and therefore tying, in only 15 cases, the same cases where he has found below cost pricing. In the state court case, Valassis claimed tortious interference with an expectancy covering *every customer in the market*. 7/21/09 Trial Tr. (Exhibit 5 hereto) at 57; 7/22/09 Trial Tr. (Exhibit 6 hereto) at 12. Yet Dr. Bamberger presented the very same damages

9

as applicable to both cases. A square peg cannot suddenly be turned round just because Valassis wishes it to be so. Dr. Bamberger's estimate of the "aggregate effect of News America's conduct", *supra* at 4, cannot assess antitrust injury, since it is not News America's "aggregate" conduct that is even allegedly anticompetitive here – it is (at most) 15 offers out of at least 250.

For these reasons, Dr. Bamberger's damages estimate cannot constitute antitrust injury. As the Supreme Court noted in *Brooke Group, supra* at 223:

> "To hold that the antitrust laws protect competitors from the loss of profits due to [above cost] price competition would, in effect, render illegal any decision by a firm to cut prices in order to increase market share. The antitrust laws require no such perverse result."

(Citations omitted.) As the Supreme Court added in *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340-341 (1990), "[w]hen prices are not predatory, any losses flowing from them cannot be said to stem from an anticompetitive aspect of the defendants' conduct." Damages must "reflect only the losses directly attributable to *unlawful* competition." *MCI Communications Corp. v. Amer. Tel. & Tel. Co.*, 708 F.2d 1081, 1162 (7th Cir.), *cert. den.*, 464 U.S. 891 (1983).[5] Yet Dr. Bamberger testified that in his damages model, he did not "distinguish between [Defendant's] legal or pro-competitive behavior" and behavior "that is anti-competitive or illegal." 6/11/09 Trial Tr. at 105.

In the absence of any proof of antitrust injury, Valassis' entire case must be dismissed.

---

[5] *See also Allegheny Pepsi-Cola Bottling Co. v. Mid-Atlantic Coca-Cola Bottling Co., Inc.*, 690 F.2d 411, 415 (4th Cir. 1982) (before and after method rejected because, plaintiff "made no attempt to show what part of the [damages] was caused by the predatory pricing . . . an antitrust plaintiff is entitled to recover only for that portion of a price reduction caused by the defendants' unlawful conduct.").

10

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorneys for Defendants

/s/ Lara Fetsco Phillip
Herschel P. Fink (P13427)
David A. Ettinger (P26537)
Lara Fetsco Phillip (P67353)
Honigman Miller Schwartz and Cohn LLP
Attorneys for Plaintiff
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226-3506
(313) 465-7368
lphillip@honigman.com

Raymond C. Fay, Esq.
Constantine Cannon LLP
1627 Eye Street N.W., 10th Fl.
Washington, D.C. 20006
(202) 204-3500

Jeffrey I. Shinder, Esq.
Kerin Coughlin, Esq.
Constantine Cannon LLP
450 Lexington Avenue, 17th Fl.
New York, New York 10017
(212) 350-2700

Julie Shepard, Esq.
Richard J. Stone, Esq.
Hogan & Hartson LLP
1999 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
(310) 785-4664

Dated: August 13, 2009            Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2009, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Carl H. von Ende, David S. Mendelson, A. Michael Palizzi, Anthony J. Rusciano, Gregory L. Curtner, Julie L. Kosovec, Kimberly L. Scott, Marcy L. Rosen, Robert J. Wierenga, Herschel P. Fink, David A. Ettinger, Jeffrey I. Shinder, Kerin E. Coughlin, Lara Fetsco Phillip, Raymond C. Fay, Brian D. Wassom and I hereby certify that I have mailed by United States Postal Service the paper(s) to the following non-ECF participants: Richard L. Stone, Henry Baskin, and Kenneth D. Klein.

/s/ Lara Fetsco Phillip
Herschel P. Fink (P13427)
David A. Ettinger (P26537)
Lara Fetsco Phillip (P67353)
Honigman Miller Schwartz and Cohn LLP
Attorneys for Plaintiff
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226-3506
(313) 465-7368
lphillip@honigman.com