UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALASSIS COMMUNICATIONS, INC.,

Plaintiff,

v.

NEWS AMERICA MARKETING, a/k/a NEWS AMERICA INCORPORATED, a/k/a NEWS AMERICA MARKETING GROUP; NEWS AMERICA MARKETING FSI, LLC, a/k/a NEWS AMERICA MARKETING FSI, INC.; and NEWS AMERICA MARKETING IN-STORE SERVICES, LLC, a/k/a NEWS AMERICA MARKETING IN-STORE SERVICES, INC.,

Defendants.

Case No. 2:06-cv-10240-AJT

Hon. Arthur J. Tarnow

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS IN ACCORDANCE WITH MAGISTRATE KOMIVES' ORDER GRANTING EXPEDITED DISCOVERY**

On February 3, 2014, this Court granted Valassis' motion for **expedited** discovery, which it confirmed in a written order on February 4 containing seven clear categories for discovery. News America inaccurately suggests that it quickly complied with the February 4 order. *See* Defs.' Br. at 2. In reality, News America ignored the Court's February 4 order, acting as if its objections, which were overruled, operated as a stay. *See* E.D. Mich. LR 72.2. Nearly six months later, News America still has not fully complied with the Court's February 4 order. News America does not deny that its production is not yet complete or that it has refused to produce documents that it was specifically ordered to produce; rather, it twists facts and context to set up straw men, and hides behind bare numbers and non-specific promises of an ongoing production.

In an effort make it seem as if it complied with the Court's February 4 order, News America points to productions it withheld until after Valassis filed its motion to compel (which amount to nearly 25% of the files produced), including a 110-gigabyte production delivered on July 24, and another purportedly sent that same day at 7:55 pm, *after* News America filed its response brief, (Ex. 1). Compounding the problem, News America did not actually produce documents that it represented it had sent on July 24. Valassis did not receive those documents until July 28.

Valassis did not receive "ISP invoice data" until July 31.[1] Finally, after the close of business Friday, August 1, News America purported to produce "retailer commission data and invoice data for FSI products." Ex. 2. Without an opportunity to process and review this data, Valassis cannot say at this time whether it is complete.[2] Still, News America's contention that it promptly complied with the Court's order is baseless. As stated below, Valassis' motion should be granted.

## I. News America's Production Of Negotiation Documents Is Incomplete.

This Court ordered expedited discovery not only of the contracts, but also of "News America's negotiations with CPGs." Dkt #429 at 6. By withholding the actual negotiations, News America is in direct violation of the order, and is withholding highly relevant evidence of its violations of the Court's 2011 Order prohibiting unlawful bundling and tying. Dkt. #412. A tying claim involves an analysis of News America's ability to use prices to coerce purchasers of ISPs to also purchase FSIs from News America. *See id.*, §II, ¶¶4(a)-(b). Where the tie is not evident on the face of an agreement evidence of coercion is at the heart of

[1] On July 31, Valassis' counsel asked News America's counsel to identify by Bates number the "ISP invoice data" referenced in the response brief. News America's counsel then sent an email claiming the data had been emailed on July 24, and included a copy of the purported July 24 email. Valassis' counsel did not receive the July 24 email, and even if it had, News America's production would still be incomplete because the July 24 email did not attach the data. *See* Ex. 3.

[2] The parties will address this during their conference on the statement of contested and uncontested issues.

establishing whether the seller in fact conditioned the purchase of one product on the purchase of another. *See Bell v. Cherokee Aviation Corp.*, 660 F.2d 1123, 1131 (6th Cir. 1981). This evidence, especially with this defendant, will lie in the negotiations between News America and the CPGs – *i.e.*, how News America communicated its proposals and the CPGs' reactions to each. As this Court already recognized, the final proposal and response are only the tip of the iceberg and News America's arguments that it should be permitted to withhold this evidence are meritless.[3]

News America tries to defend its failure to comply with this Court's order by distorting Valassis' requests and the scope of this Court's orders. To be clear, Valassis did not limit its requests to only those documents that News America agreed to produce in *Dial*. In context, Valassis argued that News America could

[3] News America tellingly did not provide the Court with the documents it tries to pass off as "negotiation" documents. In fact, they demonstrate that News America has not produced anything close to all of the negotiations that took place *before* reaching final proposals; they show News America's internal discussions and approvals of the pricings that would be offered to CPGs, or *post-contract* correspondence. *See, e.g.*, Ex. 4 (Massimo Zanetti documents include only News America's communications but not the CPGs responses, and show ISP discounts conditioned on FSI purchases); Ex. 5 (Little Debbie documents contain no communications with CPGs, but an FSI agreement showing that ISP rates without a ROFR will be [redacted] higher than with a ROFR); Ex. 6 (WhiteWave documents contain one email exchange with the CPG regarding form breaks but not News America's actual proposals); Ex. 7 (Silmilasan documents exclude attachments sent to CPGs); Ex. 8 (Suncore documents with one note from the CPG regarding post-contract issues); Ex. 9, (Atkins); Ex. 10 (ConAgra).

not claim that a production in this case would cause undue burden because of its obligation to produce documents in *Dial* and, thus, any burden in this case would be minimized by the fact that these same documents had been requested in *Dial*. At no point did Valassis suggest, nor did this Court find,[4] that News America's production was limited to what was ultimately produced in *Dial*. Valassis was not a party to any discovery negotiations in *Dial*, and News America's obligation to produce documents in this case is not coterminous with its production in *Dial*. Even News America took this position before it became convenient to disagree with it. *See* Dkt. #437 at 6 (arguing that discovery in "a different case [*Dial*], involving different parties" was not the same as ordered here).

Similarly, News America argues that Valassis should be satisfied with whatever News America and the *Dial* plaintiffs negotiated. But whatever negotiations may have taken place in a different case with different plaintiffs are irrelevant to News America's compliance with this Court's orders. In fact, this

---

[4] Contrary to the misleading impression given by News America's incomplete quote from the Court's order overruling News America's discovery objections, Defs.' Br. at 7, the Court did not rely "only" on the mitigating effect of *Dial* in finding that News America failed to establish an undue burden. In addition to noting the Magistrate's benefit of having the mitigation argument, the Court found that "*Defendants did not respond to this argument* before the Magistrate *or in their Objection*." Dkt. #442 at 7 (emphasis added). Notably, in response to News America's objections, Valassis relied not only on the mitigating effect of *Dial*, but on the fact that News America failed to present any evidence substantiating a burden in the first place. *See* Dkt. #434 at 22-25.

supports Valassis' position that News America's production here was random: News America simply turned over what it negotiated with different plaintiffs in a different case without regard to the admittedly different scope of the Court's order here. *See* Defs.' Br. at 3. News America's effort to limit its production in *Dial*, in which Valassis is not a party, does not excuse its incomplete production here.

Finally, News America argues that it should not be required to produce documents from the custodians who actually negotiated with CPGs because the *Dial* court did not order these documents to be produced. This is much ado about nothing. While the claims in *Dial* may include bundling and tying, News America conspicuously leaves out one major factor in the *Dial* court's analysis: the *Dial* plaintiffs *are the CPGs* and *already possessed the negotiation documents* because they were *parties to the negotiations*. *See* Dkt. #450-21 at 11. Valassis' position is far different, and, consequently so is the balance of factors that weigh in favor of compelling production here. Valassis should not be forced to undertake extensive third-party discovery of numerous CPGs when this Court already ordered News America to produce the documents on an expedited basis.

## II. Valassis' Motion Is Not Otherwise Moot.

News America's position that it has fully satisfied its burden to produce its contracts with retailers and CPGs is incorrect. News America relies on the fact that it told Valassis that it would produce the ordered contracts and then produced some

of them on a rolling basis, including productions on the same day it filed its response to Valassis' motion. Yet a promise of additional production at some unspecified time "is a completely inadequate response" and "is treated as a failure to answer or respond." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 246-47 (M.D.N.C. 2010). Likewise, News America's concession that it is operating a rolling production simply shows that its production is not complete, and is no excuse for its disregard of the February 4 order. *See Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, 2010 WL 1790354, at *2 (E.D. Mich. May 5, 2010).

Moreover, Valassis' motion is not moot as to invoice data.[5] News America admits as much in its response: Valassis' motion pointed out that News America's invoice data was available in electronic databases and News America's response states that it is working to produce the "electronic databases containing the additional invoice and payment information." Defs.' Br. at 12. In other words, these databases were not produced. *See id*. n.5. Nor did News America provide any specific assurance that it would produce them during the meet and confer process. Valassis' motion based on the absence of invoice data was hardly premature and has not been shown to be moot. *See Kinetic Concepts*, 268 F.R.D. at 246-47.

[5] While the Court ordered News America to produce invoices, *see* Dkt. #429 at 6, Valassis' motion relied on the fact that the same data contained in invoices is available and accessible in electronic databases, *see* Dkt. #443 at 12-13. News America prefers to blur this distinction in order to give the appearance of a burden. Defs.' Br. at 11-12 (contending that invoices are maintained in hard copy).

## III. News America Still Does Not Substantiate Its Claims Of Burden.

News America once again fails to substantiate its argument that granting Valassis' motion would result in an undue burden.[6] Nor can News America simply rely on sheer volume. *See In re Seroquel Prod. Liab. Litig.*, 244 F.R.D. 650, 661 n.8 (M.D. Fla. 2007). It's not the size of the production that counts, it's the substance. *See Leaf v. Cottey*, 2005 WL 2218232, at *5 (S.D. Ind. Sept. 8, 2005). As shown above, News America's productions thus far lack substance.

Even still, News America is wrong to assume that this motion is motivated by a complete lack of evidence of bundling and tying. *See* Defs.' Br. at 1. There is evidence that News America continues to condition ISP discounts and prices on the CPGs' agreement to purchase FSIs from News America. *See* Ex.11. Valassis needs the additional materials that are the subject of this motion in order to evaluate whether these arrangements violate the Court's 2011 Order. Yet is clear, despite News America's delay tactics, that Valassis has not "come up empty." Valassis' motion to compel should be granted.

David Mendelson (P53572)
The Mendelson Law Firm, PC

/s/ Michael C. Simoni
Michael C. Simoni (P70042)
Miller, Canfield, Paddock and Stone, PLC

---

[6] News America's suggestion that it would be required to collect documents from more than 240 custodians is unsubstantiated and overblown. A review of News America's organization chart indicates that the number of custodians is far smaller. Given this case's size and complexity, the burden on News America is not undue. *See Seroquel*, 244 F.R.D. at 661 n.8

**CERTIFICATE OF SERVICE**

I certify that on August 4, 2014, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will serve all counsel of record.

Respectfully submitted,

/s/ Michael C. Simoni
MILLER CANFIELD PADDOCK and STONE, P.L.C.

22722498.5\112253-00005